IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-03347-PAB-KAS

STEVEN MCCRANIE,

     Plaintiff,

v.

MOLLY GAVINSKI,
RENE ACUNA,
KARLA GUTIERREZ, and
JOHN DOE # 1,

     Defendants.

_____

**ORDER**
_____

This matter is before the Court on the Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(B)(6) [Docket No. 16] filed by defendants Molly Gavinski ("Officer Gavinski"), Rene Acuna ("Sergeant Acuna"), and Karla Gutierrez ("Sergeant Gutierrez") (collectively, the "defendants").  Plaintiff Steven McCranie filed a response, Docket No. 26, and defendants filed a reply.  Docket No. 31.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.    BACKGROUND[1]

On January 12, 2022, Mr. McCranie was incarcerated at the Colorado State Penitentiary ("CSP"), which is a Level V security correctional institution managed by the Colorado Department of Corrections ("CDOC").  Docket No. 1 at 1, 3, ¶ 13.  CSP

_____

[1] The facts below are taken from plaintiff's complaint, Docket No. 1, and are presumed to be true for purposes of ruling on defendants' motion to dismiss.  *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

houses some of the most violent and dangerous offenders in the state. *Id*. at 3, ¶ 13. Officer Gavinski, Sergeant Acuna, Sergeant Gutierrez, and John Doe # 1 worked at CSP and were employed by CDOC. *Id.*, ¶¶ 7-10. Sergeant Acuna and Sergeant Gutierrez supervised Officer Gavinski and John Doe # 1, an employee of CSP. *Id*. at 3, 13, ¶¶ 10, 102. This action arises from an assault at CSP on January 12, 2022, where inmate Mark Daniels attacked Mr. McCranie. *Id*. at 1-2.

CSP has six "pods" for inmate housing. *Id*. at 4 n.1. Each pod contains up to eight "day halls" and each day hall contains approximately 15 single-offender cells. *Id*. Absent special circumstances, such as a medical appointment, inmates do not exit their day halls. *Id*. Generally, CSP policies prohibit an inmate from moving between different parts of the prison without at least one escort officer accompanying the inmate. *Id*. at 5, ¶¶ 22-23. CSP houses inmates who are at risk of harm together in designated day halls for their protection, including inmates with mental disabilities and inmates who have disassociated from gangs. *Id*. at 3-4, ¶¶ 14, 16. Inmates and prison staff refer to these designated day halls as "Soft Pods." *Id*. at 3, ¶ 14. The CSP officer in the control room must confirm that an inmate is authorized to enter the Soft Pod before opening the door. *Id*. at 4, ¶ 19.

On January 12, 2022, Mr. McCranie was housed in F-Pod's Day Hall 5, which was the designated Soft Pod at CSP. *Id*. at 7, ¶ 41. Mr. McCranie was housed in the Soft Pod because he renounced his gang affiliation and received death threats from Mr. Daniels. *Id.*, ¶¶ 42-43. At the time of the assault, defendants knew that Mr. Daniels was an active member of the Aryan Syndicate gang, which is a white supremacist gang with an extensive history of assaulting and murdering other inmates in prison. *Id*. at 5,

¶¶ 26-27.  Defendants knew that Mr. Daniels had a violent history of assaulting other inmates and prison staff based on information from Mr. Daniels' inmate file and staff briefings.  *Id*. at 5-6, ¶¶ 29-33.  Mr. Daniels threatened Mr. McCranie and Mr. McCranie's friends who were not incarcerated via letters and phone calls.  *Id*. at 6, ¶ 36.  Chelsea Gonzalez, Mr. McCranie's friend, reported to the CSP warden that Mr. Daniels threatened her and Mr. McCranie.  *Id*., ¶ 37.  Due to the threats, CSP issued a "keep-separate" order for Mr. McCranie and Mr. Daniels.  *Id*., ¶ 38.  Defendants knew about the keep-separate order and knew that it was issued to protect Mr. McCranie from Mr. Daniels.  *Id*. at 6, 8, ¶¶ 39-40, 55.  Defendants knew that Mr. Daniels posed a significant safety risk to other inmates at CSP.  *Id*. at 6, ¶ 35.  Defendants were aware that Mr. McCranie was housed in the Soft Pod for his protection.  *Id*. at 2, 14, ¶ 104.

Officer Gavinski had worked at CSP for several years and knew that inmates would often try to enter areas where they were not allowed.  *Id*. at 8, ¶ 51.  Based on her training and experience, Officer Gavinski knew there were significant safety risks associated with allowing inmates to enter a day hall where they did not live.  *Id*.  Officer Gavinski knew that Day Hall 5 was the designated Soft Pod and that inmates in that day hall were particularly vulnerable to attacks and retaliation by other inmates.  *Id*., ¶ 52.

At approximately 1:20 p.m. on January 12, 2022, Officer Gavinski was stationed in the F-Pod control center where she was responsible for controlling the doors to the day halls in F-Pod.  *Id*. at 7, ¶¶ 44-45.  Inmates and staff could only enter the day halls if Officer Gavinski opened the door from within the control center.  *Id*., ¶ 45.  Sergeant Acuna was in the control center with Officer Gavinski and was the control center supervisor.  *Id*. at 8-9, 14, ¶¶ 50, 64, 105.  Sergeant Gutierrez was stationed within the

F-Pod outside of Day Hall 5 and Day Hall 6. *Id.* at 8, ¶ 50. Around 1:20 p.m., defendant John Doe # 1 escorted Mr. Daniels to his day hall, which was Day Hall 6. *Id.* at 7, ¶ 46. John Doe # 1 brought Mr. Daniels to the door of Day Hall 6 but did not ensure that Mr. Daniels entered Day Hall 6. *Id.*, ¶ 48. Instead, he allowed Mr. Daniels to freely wander outside of the control room. *Id.*, ¶ 47. Officer Gavinski observed John Doe # 1 leave Mr. Daniels unattended at the entry to Day Hall 6. *Id.* at 7, 9, ¶¶ 49, 60. Sergeant Acuna and Sergeant Gutierrez observed John Doe # 1 walk away before ensuring that Mr. Daniels entered Day Hall 6 and did not instruct John Doe # 1 to remain with Mr. Daniels. *Id.* at 8, 14, ¶¶ 50, 107, 110. Defendants knew that Mr. Daniels was housed in Day Hall 6, not Day Hall 5. *Id.* at 8, ¶¶ 53-54.

While standing outside of the control room, Mr. Daniels asked Sergeant Acuna, "Who was operating the control room?" *Id.*, ¶ 56. Sergeant Acuna instructed Mr. Daniels to go to the control window to find out. *Id.* Mr. Daniels walked to the control room window without an escort and recognized Officer Gavinski inside the control room. *Id.*, ¶ 57. Officer Gavinski saw Mr. Daniels at the control room window and heard Mr. Daniels ask her to open Day Hall 5 at least two or three times by stating, "control, give me day hall 5." *Id.* at 9, ¶ 58. When Officer Gavinski heard Mr. Daniels repeatedly ask for Day Hall 5 to be opened, she recognized that Mr. Daniels was attempting to enter the wrong day hall. *Id.*, ¶ 59. Despite knowing that Mr. Daniels was not allowed in Day Hall 5 and that he posed a significant risk to Mr. McCranie, Officer Gavinski opened the door to Day Hall 5, which allowed Mr. Daniels to enter Day Hall 5. *Id.*, ¶ 61. Officer Gavinski then said, "oh my god, I screwed up . . . I let the wrong offender into day hall 5." *Id.*, ¶ 62.

Inside the control room, Sergeant Acuna heard Mr. Daniels ask for Day Hall 5 to be opened, and she knew that Mr. Daniels was not allowed inside Day Hall 5.  *Id*., ¶¶ 63, 65.  Sergeant Gutierrez was standing "a few feet away" from Mr. Daniels before he entered Day Hall 5 and knew that he was not allowed in Day Hall 5.  *Id*. at 10, ¶¶ 67-68.

After Mr. Daniels entered Day Hall 5, Sergeant Gutierrez told Officer Gavinski and Sergeant Acuna to close the door to Day Hall 5.  *Id*., ¶ 71.  Defendants observed Mr. Daniels scan the room for Mr. McCranie and run aggressively towards Mr. McCranie.  *Id*., ¶ 73.  Mr. Daniels delivered approximately ten punches, kicks, and knee-strikes to Mr. McCranie's head and face.  *Id*., ¶ 74.  Mr. McCranie did not fight back.  *Id*. at 11, ¶ 77.  During the assault, Sergeant Gutierrez deployed pepper spray on the inmates through a tray slot to Day Hall 5.  *Id*., ¶ 76.  Mr. McCranie suffered significant injuries from the assault, including bruising, lacerations, neck pain, and back pain.  *Id*., ¶ 80.  CSP released Mr. McCranie from prison approximately one month after the assault.  *Id*., ¶ 81.

Mr. McCranie asserts two claims in his complaint pursuant to 42 U.S.C. § 1983: (1) an Eighth Amendment claim against all defendants in their individual capacities for failing to protect Mr. McCranie from the assault; and (2) an Eighth Amendment claim against Sergeant Acuna and Sergeant Gutierrez in their individual capacities for failure to supervise Officer Gavinski and John Doe # 1.  *Id*. at 11-15, ¶¶ 82-113.

## II.    LEGAL STANDARD

### A.  <u>Motion to Dismiss</u>

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  A court, however, does not need to accept conclusory allegations.  *See, e.g., Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then

6

plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted).

Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still

must contain either direct or inferential allegations respecting all the material elements

necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at

1286 (alterations omitted).

### B. <u>Qualified Immunity</u>

"Qualified immunity balances two important interests – the need to hold public

officials accountable when they exercise power irresponsibly and the need to shield

officials from harassment, distraction, and liability when they perform their duties

reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  A court should resolve

questions of qualified immunity at the earliest possible stage of litigation.  *Anderson v.*

*Creighton*, 483 U.S. 635, 646 n.6 (1987).  However, a plaintiff facing a qualified

immunity challenge still does not have a heightened pleading standard.  *Currier v.*

*Doran*, 242 F.3d 905, 916-17 (10th Cir. 2001).

Under the doctrine of qualified immunity, "government officials performing

discretionary functions generally are shielded from liability for civil damages insofar as

their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800,

818 (1982).  Thus, to survive a motion to dismiss under Rule 12(b)(6) "where a qualified

immunity defense is implicated, the plaintiff 'must allege facts sufficient to show

(assuming they are true) that the defendants plausibly violated their constitutional

rights.'"  *Hale v. Duvall*, 268 F. Supp. 3d 1161, 1164 (D. Colo. 2017) (quoting *Robbins v.*

*Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008)).  When a

defendant raises the defense of qualified immunity, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *T.D. v. Patton, 868 F.3d 1209*, 1220 (10th Cir. 2017) (internal quotation marks omitted).  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson*, 555 U.S. at 236.

A constitutional right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Surat v. Klamser*, 52 F.4th 1261, 1276 (10th Cir. 2022).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Torres v. Madrid*, 60 F.4th 596, 603 (10th Cir. 2023); *see also Irizarry v. Yehia*, 38 F.4th 1282, 1293 (10th Cir. 2022).  The relevant precedent is "considered on point if it involves *materially similar conduct* or applies with *obvious clarit*y to the conduct at issue." *Yehia*, 38 F.4th at 1294 (emphasis in original); *see also Shepherd v. Robbins*, 55 F.4th 810, 815 (10th Cir. 2022).  "To be clear, we do not require plaintiffs to engage in a scavenger hunt for a prior case with identical facts.  We ask whether the existing law provides fair warning to a defendant." *Shepherd*, 55 F.4th at 815 (citations omitted).  "When the public official's conduct is egregious, even a general precedent would apply with obvious clarity." *Yehia*, 38 F.4th at 1294 (quoting *Lowe v. Raemisch*, 864 F.3d 1205, 1210 (10th Cir.

2017)); *see also Surat*, 52 F.4th at 1276 (noting that "there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances").

## III.    ANALYSIS

Defendants move to dismiss all claims against Officer Gavinski, Sergeant Acuna, and Sergeant Gutierrez pursuant to Fed. R. Civ. P. 12(b)(6).  Docket No. 16 at 3-14.[2] Defendants also assert qualified immunity on all claims.  *Id*. at 14-15.

### A.  <u>First Claim – Officer Gavinski</u>

Plaintiff's first claim alleges that Officer Gavinski violated Mr. McCranie's Eighth Amendment rights by failing to protect him from the assault.  Docket No. 1 at 11-13, ¶¶ 82-100.  Specifically, plaintiff alleges that "Defendant Gavinski disregarded a substantial risk of harm to Mr. McCranie when she allowed Mr. Daniels to enter Day Hall #5 – without an escort and upon his own request."  *Id*. at 12, ¶ 86.  Officer Gavinski argues that Mr. McCranie has failed to plead a constitutional violation and she is entitled to qualified immunity.  Docket No. 16 at 3-9, 14-15.

### 1)  *Constitutional Violation*

A violation of the Eighth Amendment occurs when a prison official is deliberately indifferent to a substantial risk of serious harm to an inmate.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  Although prison officials have a duty to protect inmates from violence at the hands of other inmates, not every injury resulting from violence between inmates results in constitutional liability.  *Id*. at 833-34.  An inmate asserting an Eighth

---

[2] Defendants do not move on behalf of the unnamed defendant John Doe # 1 to dismiss the first claim against him.  Accordingly, the Court declines to evaluate that portion of claim one.

Amendment claim must demonstrate that (1) objectively, the harm he complains of is sufficiently "serious" to merit constitutional protection and (2) defendants were subjectively aware of a substantial risk to plaintiff's health or safety and acted in purposeful disregard of that risk.  *Id*. at 834, 847; *Martinez v. Beggs*, 563 F.3d 1082, 1088-89 (10th Cir. 2009); *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018).

To satisfy the objective component of the standard, an inmate "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  A prison official's "act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id*. (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  To satisfy the subjective component of the standard, the inmate must show both that the prison official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the prison official did in fact "draw the inference." *Id*. at 837.  A prisoner must establish "that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Martinez*, 563 F.3d at 1089 (citation omitted). "[D]eliberate indifference entails something more than mere negligence," but "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[W]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Durkee v. Minor*, 841 F.3d 872, 876 (10th Cir. 2016) (quoting *Farmer*, 511 U.S. at 842).

Defendants argue that plaintiff has failed to adequately plead the subjective prong of the failure to protect claim because the allegations in the complaint characterize Officer Gavinski's actions as "accidental."  Docket No. 16 at 3-9.[3] Defendants assert that plaintiff does not allege that Officer Gavinski opened the door to Day Hall 5 with any intent of exposing Mr. McCranie to an assault because the complaint states that, "[c]ontemporaneous with opening the door for Mr. Daniels, Defendant Gavinski said 'oh my god, I screwed up . . . I let the wrong offender into day hall 5.'" *Id*. at 5 (quoting Docket No. 1 at 9, 12, ¶¶ 62, 87).  Defendants contend that Mr. McCranie explicitly describes Officer Gavinski's action as an "error." *Id*. (quoting Docket No. 1 at 12, ¶ 87).  Defendants argue that the Tenth Circuit has repeatedly held that an "accident" or "mistake" does not constitute deliberate indifference under the Eighth Amendment. *Id*. at 8 (citing *Farmer*, 511 U.S. at 840; *Estelle*, 429 U.S. at 105; *McLemore v. Darr*, 736 F. App'x 753, 756 (10th Cir. 2018) (unpublished)).  Defendants contend that the Tenth Circuit's ruling in *McLemore* is "nearly identical" to the circumstances in this case. *Id*. at 8-9.

Mr. McCranie responds that defendants' argument ignores numerous relevant allegations in the complaint and mischaracterizes Officer Gavinski's contemporaneous admission of wrongdoing.  Docket No. 26 at 9.  Mr. McCranie argues that the complaint plausibly alleges that Officer Gavinski knew that Mr. McCranie was housed in the Soft Pod for his protection and that there was a keep-separate order between Mr. Daniels and Mr. McCranie, *id*. at 10, and that Officer Gavinski opened the door to Day Hall 5

---

[3] Defendants do not challenge whether plaintiff has adequately pled the objective prong of his first claim against Officer Gavinski.  Accordingly, the Court assumes that Mr. McCranie has plausibly alleged this element.

despite knowing that Mr. Daniels did not live there.  *Id*.  Plaintiff contends that Officer Gavinski's statement that she "screwed up" is plausibly read as an admission to being deliberately indifferent.  *Id*. at 9-10.

The Court finds that Mr. McCranie has plausibly alleged that Officer Gavinski was subjectively aware of and disregarded a substantial risk to plaintiff's safety.  Officer Gavinski knew that Mr. Daniels was an active member of the Aryan Syndicate gang, had a violent history of assaulting other inmates, and posed a significant safety risk to inmates at CSP.  Docket No. 1 at 5-6, ¶¶ 26, 29-33, 35.  Officer Gavinski was aware that CSP issued a keep-separate order for Mr. McCranie and Mr. Daniels in order to protect Mr. McCranie.  *Id*. at 6, 8, ¶¶ 38-40, 55.  Officer Gavinski knew that Mr. McCranie was housed in Day Hall 5, the Soft Pod, for his protection and that inmates in the Soft Pod were particularly vulnerable to attacks by other inmates.  *Id*. at 2, 7-8, ¶¶ 41, 52.  Officer Gavinski understood that Mr. Daniels was housed in Day Hall 6, not Day Hall 5.  *Id*. at 8, ¶¶ 53-54.  On January 12, 2022, Officer Gavinski was stationed in the F-Pod control center with the responsibility of controlling the doors to the day halls.  *Id*. at 7, ¶¶ 44-45.  Inmates and staff could only enter the day halls if Officer Gavinski opened the door from within the control center.  *Id*., ¶ 45.  Officer Gavinski observed Mr. Daniels at the control room window and heard Mr. Daniels ask her to open Day Hall 5 at least two or three times.  *Id*. at 9, ¶ 58.  When Officer Gavinski heard Mr. Daniels repeatedly ask for Day Hall 5, she recognized that Mr. Daniels was attempting to enter the wrong day hall.  *Id*., ¶ 59.  Despite knowing that Mr. Daniels was not allowed in Day Hall 5 and that he posed a significant risk to Mr. McCranie, Officer Gavinski opened the door to Day Hall 5, which allowed Mr. Daniels to enter Day Hall 5.  *Id*., ¶ 61.  The Court

finds that these allegations are sufficient to plead that Officer Gavinski knew that Mr. McCranie "faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *See Martinez*, 563 F.3d at 1089; *see also Harter v. Chafee Cnty.*, No. 22-cv-01759-STV, 2023 WL 8622736, at *7 (D. Colo. Dec. 13, 2023) (finding that an officer's "decision to open Plaintiff's door despite knowing that Plaintiff was in administrative protection and was at risk from other inmates, one of whom was lurking outside the cell, constitutes deliberate indifference").

Defendants are correct that accidental conduct is insufficient to establish the subjective element of a deliberate indifference claim. *See McLemore*, 736 F. App'x at 756 ("accidental conduct does not show deliberate indifference); *see also Burke v. Regalado*, 935 F.3d 960, 992 (10th Cir. 2019) (noting that a medical professional's "accidental or inadvertent failure to provide adequate medical care" does not constitute an Eighth Amendment violation (citation omitted)). However, the Court finds that the complaint's allegation that Officer Gavinski said "oh my god, I screwed up . . . I let the wrong offender into day hall 5," *see* Docket No. 1 at 9, ¶ 62, is not so plainly inconsistent with the allegations that Officer Gavinski "recognized that Mr. Daniels was attempting to enter the wrong day hall" and "[d]espite knowing that Mr. Daniels was not allowed in Day Hall #5 and that he posed a significant risk to Mr. McCranie, Defendant Gavinski opened the door," *id.*, ¶¶ 59, 61, that paragraphs 59 and 61 should be ignored. *See Schapker v. Waddell & Reed Fin., Inc.*, 2018 WL 1033277, at *10 (D. Kan. Feb. 22, 2018) ("although the court is mindful of the potentially contradictory allegations, on a motion to dismiss under Rule 12(b)(6), the Court must accept Plaintiff's well-pled

allegations as true").[4]  Accordingly, the Court finds that Mr. McCranie has plausibly pled

his Eighth Amendment claim against Officer Gavinski.[5]

### 2) Clearly Established Law

The Court next considers whether the right was clearly established as of January

12, 2022.  Defendants argue that they have found no Supreme Court or Tenth Circuit

authority establishing that the "accidental admittance of a potentially dangerous inmate

---

[4] Some courts have found that where a plaintiff's "own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." *Pierce v. Fordham Univ., Inc.*, 2016 WL 3093994, at *2 n.1 (S.D.N.Y. June 1, 2016), *aff'd*, 692 F. App'x 644 (2d Cir. 2017) (unpublished) (citations omitted); *see also Jacoby v. Cable News Network, Inc.*, 537 F. Supp. 3d 1303, 1313 n.5 (M.D. Fla. 2021), *aff'd*, 2021 WL 5858569 (11th Cir. Dec. 10, 2021) ("When the facts as plaintiff alleges are so contradictory that doubt is cast upon their plausibility, the court may dismiss the claim." (citation, internal quotations, and alterations omitted)); *Oliver v. Meow Wolf, Inc.*, 2020 WL 6939875, at *13 (D.N.M. Nov. 25, 2020) (finding that an "allegation [was] simply not plausible in light of the more specific factual allegations that directly contradict it"). Here, the Court finds that the allegations in the complaint are not so contradictory that the Court should disregard paragraphs 59 and 61.

[5] The Court finds that defendants' cited case *McLemore*, involving an inmate-on-inmate attack during medication distribution in a prison housing pod, is distinguishable. *See McLemore*, 736 F. App'x at 754.  In that case, it was undisputed at the summary judgment stage that the prison guards used the following policy for distributing medication: 1) an officer would remotely unlock each inmate's cell door one at a time for each inmate to retrieve medicine from the nurse; 2) the inmate would return to his cell; and 3) once the inmate's cell door was closed, as indicated by a light on the officer's desk, the officer would unlock the next inmate's door.  *Id*.  It was undisputed that, when plaintiff left his cell to get his medication, plaintiff's cell door locked behind him.  *Id*.  When plaintiff returned to his cell, the desk light indicated that his cell door was locked, even though plaintiff was not inside his cell.  *Id*.  As a result, the officer then opened another inmate's door and that inmate attacked the plaintiff.  *Id*.  The Tenth Circuit affirmed the district court's grant of summary judgment to the officer on the Eighth Amendment failure to protect claim because plaintiff "provided no evidence" that the officer's action of opening the other inmate's door before plaintiff entered his cell was "anything but accidental."  *Id*. at 755-56.  This case is at the motion to dismiss stage, not the summary judgment stage.  Mr. McCranie's well-pled allegations about Officer Gavinski's knowledge are sufficient to allege the subjective component of the deliberate indifference standard at the pleading stage.

into the wrong unit" violates clearly established law.  Docket No. 16 at 15.  Mr. McCranie cites *Durkee* in support of his argument that Officer Gavinski violated his clearly established rights under the Eighth Amendment.  Docket No. 26 at 12-14.  Mr. McCranie argues that *Durkee* clearly establishes that when a substantial risk of an inmate attack is "well-documented and expressly noted by prison officials prior to the attack in question," and when the defendant is informed of the risk of allowing an inmate into an area where the inmate could commit an assault, such facts are sufficient to overcome qualified immunity.  *Id*. at 12-13 (citing *Durkee*, 841 F.3d at 874-77).[6]

In *Durkee*, the Tenth Circuit denied qualified immunity to an officer, at the summary judgment stage, for an inmate's Eighth Amendment failure to protect claim involving an inmate-on-inmate assault.  *Durkee*, 841 F.3d at 874-76.  In *Durkee*, the inmate Ramos had a history of "aggressive behavior at the jail" and threatened the plaintiff.  *Id*. at 874.  After plaintiff reported Ramos' threats, a deputy issued an incident report stating that plaintiff and Ramos could not attend any programs together or be in the same hallways or booking areas.  *Id*.  Despite having notice of the incident report, the defendant officer unshackled Ramos in the booking area of the jail when plaintiff was in the nearby visitation room, which was visible to the booking area.  *Id*. at 874-75.  Ramos took one or two steps towards the housing pod door, but then ran into the unlocked visitation room and assaulted plaintiff.  *Id*. at 875.  The Tenth Circuit found that

> where the facts as found by the district court show—as they do here—that a
> substantial risk of an inmate attack against Plaintiff was well-documented and

---

[6] In their reply, defendants argue that *Durkee* cannot provide clearly established law because that case was decided at the summary judgment stage, not the motion to dismiss stage.  Docket No. 31 at 7-8.  Defendants provide no legal authority in support of their proposition that clearly established law for qualified immunity must originate from a case at the same procedural posture.  The Court rejects this argument.

expressly noted by prison officials prior to the attack in question, and those facts further show—as they do here—that [defendant] was informed of and acknowledged the risk and was accompanying Ramos in an area where Ramos and Plaintiff were visible to each other, such facts are sufficient to permit a jury to find [defendant] had actual knowledge of the risk and disregarded it.

*Id.* at 875-76. With respect to the clearly established prong, the Tenth Circuit "easily conclude[d]" that "a reasonable officer cognizant of Plaintiff's presence in the unsecured visitation room would have understood that unshackling Ramos in the booking area posed a substantial risk of harm to Plaintiff in violation of the Eighth Amendment." *Id.* at 876 n.2.

Similarly, here, Officer Gavinski knew that Mr. Daniels had a violent history of assaulting other inmates and that CSP issued a keep-separate order for Mr. McCranie and Mr. Daniels to protect plaintiff. Docket No. 1 at 5-6, ¶¶ 29-33, 38-40. Despite knowing that Mr. Daniels was not allowed in Day Hall 5 and that he posed a significant risk to Mr. McCranie, Officer Gavinski opened the door to Day Hall 5 and allowed Mr. Daniels to enter the hall where Mr. McCranie was located. *Id.* at 7, 9, ¶¶ 41, 61. Based on *Durkee*, a reasonable officer should have understood that opening the door to the Soft Pod for Mr. Daniels when Mr. McCranie was in the Soft Pod posed a substantial risk of harm to plaintiff. *See Durkee*, 841 F.3d at 875-76 & n.2; *see also Harter*, 2023 WL 8622736, at *8 (concluding that, based on *Durkee*, any reasonable officer would have understood that opening plaintiff's door in the administrative protection pod when another inmate was "lurking outside the cell" would violate plaintiff's constitutional rights). As a result, the Court finds that Officer Gavinski is not entitled to qualified immunity at this stage for the first claim. The Court therefore denies this portion of defendants' motion.

**B. First Claim – Sergeant Acuna and Sergeant Gutierrez**

Plaintiff's first claim also alleges that Sergeant Acuna and Sergeant Gutierrez violated Mr. McCranie's Eighth Amendment rights by failing to protect him from the assault. Docket No. 1 at 11-13, ¶¶ 82-100. The complaint alleges that "Defendants Acuna and Gutierrez disregarded a substantial risk of harm to Mr. McCranie when they failed to stop Defendant Gavinski from opening Day Hall #5 for Mr. Daniels and failed to prevent Mr. Daniels from entering Day Hall #5." *Id*. at 12, ¶ 88. The complaint further alleges that the sergeants "disregarded a substantial risk of harm to Mr. McCranie when they failed to ensure that Mr. Daniels had a security escort at all times." *Id*., ¶ 90. Sergeant Acuna and Sergeant Gutierrez argue that Mr. McCranie has failed to plead a constitutional violation and they are entitled to qualified immunity. Docket No. 16 at 9-11, 14-15.

**1) Constitutional Violation**

Defendants argue that plaintiff has failed to plead the subjective prong of the failure to protect claim against Sergeant Acuna and Sergeant Gutierrez. *Id*. at 9-11.[7] Defendants assert that the complaint contains no allegations suggesting that Sergeant Acuna and Sergeant Gutierrez knew that Officer Gavinski was going to open the door to allow Mr. Daniels into Day Hall 5. *Id*. at 11. Defendants argue that, under the circumstances alleged in the complaint, "while Plaintiff was in Day Hall 5 with the door closed, there was no substantial risk of harm from which Plaintiff needed protection." Docket No. 31 at 5. Without any knowledge that Officer Gavinski was going to admit

---

[7] Defendants do not challenge whether plaintiff has adequately alleged the objective prong of his first claim against Sergeant Acuna and Sergeant Gutierrez. Accordingly, the Court assumes that Mr. McCranie has plausibly alleged this element.

the wrong offender into Day Hall 5, defendants argue that Sergeant Acuna and Sergeant Gutierrez could not have had the subjective state of mind to violate plaintiff's Eighth Amendment rights.  Docket No. 16 at 10.

Mr. McCranie responds that the complaint adequately alleges that Sergeant Acuna and Sergeant Gutierrez were aware of numerous facts demonstrating that there was a substantial risk to Mr. McCranie's safety.  Docket No. 26 at 10-11.  Plaintiff argues that both sergeants knew that Mr. Daniels lived in Day Hall 6 and that he had a keep-separate order with Mr. McCranie.  *Id*.  Mr. McCranie asserts that neither sergeant took any steps to ensure that Mr. Daniels was properly escorted.  *Id*. at 11. Furthermore, Sergeant Acuna was in the control room and heard Mr. Daniels ask for Day Hall 5 to be opened.  *Id*.

The Court finds that Mr. McCranie has failed to plausibly allege that Sergeant Acuna and Sergeant Gutierrez knew that Mr. McCranie "faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it."  *See Martinez*, 563 F.3d at 1089.  Although both sergeants observed that Mr. Daniels was unescorted outside of Day Hall 6, *see* Docket No. 1 at 14, ¶¶ 107, 110, the complaint does not allege that the sergeants knew of or disregarded a substantial risk of harm to Mr. McCranie by failing to ensure that Mr. Daniels had a security escort.  When Mr. Daniels was wandering outside of the control room unescorted, Mr. McCranie was inside Day Hall 5.  *Id*. at 7, 10, ¶¶ 41, 47, 73.  Inmates could only enter the day halls if Officer Gavinski opened the door from within the control center.  *Id*. at 7, ¶ 45.  Because Mr. McCranie alleges that he was behind a locked door to Day Hall 5, the complaint

does not plausibly allege that the sergeants knew that Mr. McCranie faced any risk of harm when Mr. Daniels was merely wandering outside of the control room unattended.

The Court agrees with defendants that there are no allegations in the complaint suggesting that Sergeant Acuna or Sergeant Gutierrez knew that Officer Gavinski would open the door to Day Hall 5 for Mr. Daniels.  The well-pled allegations of the complaint state that the sergeants knew that Mr. Daniels was housed in Day Hall 6, Mr. McCranie was housed in Day Hall 5, and that there was a keep-separate order between the inmates for Mr. McCranie's protection.  *Id*. at 6, 8, 14, ¶¶ 38-40, 53-54, 104.  Sergeant Acuna heard Mr. Daniels ask Officer Gavinski to open Day Hall 5 and Sergeant Gutierrez was standing "a few feet away" from Mr. Daniels.  *Id*. at 9-10, ¶¶ 63, 65, 67.  However, there are no allegations suggesting that the sergeants knew that Officer Gavinski would open the door to Day Hall 5 when Mr. Daniels requested entry to the wrong day hall.  Rather, the complaint alleges that Officer Gavinski had worked at CSP for several years and that the control room officer must confirm that an inmate is authorized to enter the Soft Pod before opening the door to the Soft Pod.  *Id*. at 4, 8, ¶¶ 19, 51.  There are no allegations suggesting that either sergeant was aware that Officer Gavinski would deviate from this policy and admit the wrong inmate into Day Hall 5.  Without any allegations suggesting that Sergeant Acuna or Sergeant Gutierrez knew that Officer Gavinski would unlock the door to Day Hall 5, plaintiff has failed to allege that Sergeant Acuna and Sergeant Gutierrez were subjectively aware of a substantial risk to plaintiff's safety and acted in purposeful disregard of that risk.  *See Farmer*, 511

U.S. at 834, 847; *Martinez*, 563 F.3d at 1089.[8]  Accordingly, the Court finds that Mr.

McCranie has failed to state an Eighth Amendment failure to protect claim against

Sergeant Acuna and Sergeant Gutierrez.

### 2) *Clearly Established Law*

Even if Mr. McCranie had plausibly alleged an Eighth Amendment violation

against the sergeants, the Court finds that Mr. McCranie has failed to satisfy the second

prong of the qualified immunity analysis.  Mr. McCranie cites *Durkee* in support of his

argument that Sergeant Acuna and Sergeant Gutierrez violated clearly established law.

Docket No. 26 at 12-14.  Plaintiff's theory in this case is that Sergeant Acuna and

Sergeant Gutierrez disregarded a substantial risk of harm to Mr. McCranie "when they

failed to ensure that Mr. Daniels had a security escort at all times" and "when they failed

to stop Defendant Gavinski from opening Day Hall #5 for Mr. Daniels."  *See* Docket No.

1 at 12, ¶¶ 88, 90.  However, *Durkee* did not involve an officer's failure to ensure that an

inmate had a security escort.  *See Durkee*, 841 F.3d at 874-75 (discussing how the

defendant officer was escorting and "accompanying" inmate Ramos immediately before

the assault occurred).  Therefore, *Durkee* does not clearly establish that a sergeant

violates the Eighth Amendment by failing to ensure that an inmate has "a security escort

---

[8] In his response, Mr. McCranie does not argue that the sergeants were deliberately indifferent by failing to stop Mr. Daniels from entering Day Hall 5 in the moments after Officer Gavinski opened the door.  *See* Docket No. 26 at 10-11.  Even if Mr. McCranie had raised this argument, the Court would reject it because the complaint contains no allegations indicating how fast Mr. Daniels ran into Day Hall 5 or whether Sergeant Acuna or Sergeant Gutierrez had any realistic opportunity to stop Mr. Daniels from entering Day Hall 5.  *See Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015) ("In order to be liable for failure to intervene, the officers must have observed or had reason to know of a constitutional violation and have had a realistic opportunity to intervene." (internal alterations, quotations, and citation omitted)).

at all times."  *See* Docket No. 1 at 12, ¶ 90.  Moreover, *Durkee* involved an officer's affirmative action of "unshackling" Ramos, who had threatened plaintiff, in an unlocked area where Ramos and plaintiff were visible to each other, thereby allowing Ramos to access plaintiff.  *Durkee*, 841 F.3d at 875-76 & n.2.  In *Durkee*, there were no other officers present at the scene who allegedly failed to prevent the defendant officer from unshackling Ramos.  *See id*.  Therefore, *Durkee* would not put every reasonable officer on notice that the failure to stop another officer from unpredictably unlocking the protective custody pod door for an inmate who does not live in that pod would constitute deliberate indifference.  Accordingly, the Court finds that *Durkee* does not provide clearly established law for Sergeant Acuna and Sergeant Gutierrez's alleged conduct.

Mr. McCranie also appears to argue that *Farmer* constitutes clearly established law because this Court previously held in another failure to protect case that *Farmer* applied with obvious clarity.  *See* Docket No. 26 at 14 n.1 (citing *Wilson v. Pauls*, No. 20-cv-00609-PAB-SKC, 2023 WL 2574375, at *6 (D. Colo. Mar. 20, 2023)).  In *Wilson*, the Court found that there was a genuine dispute of material fact at the summary judgment stage as to whether the defendant officer actually witnessed an attack where one inmate stabbed another inmate approximately sixty times with a shank.  *Wilson*, 2023 WL 2574375, at *1, 5.  Construing the evidence in plaintiff's favor, the Court found that "a jury could find that defendant saw the attack occurring nearly four minutes before he called the emergency alert."  *Id*. at *6.  The Court explained that "*Farmer* does not, in all cases, settle every question with respect to prison officials who fail to prevent an assault."  *Id.* (citing *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1050-51 (9th Cir. 2002) (holding that it is not always sufficient, for purposes of the second prong of the

qualified immunity analysis, "that *Farmer* clearly states the general rule that prison officials cannot deliberately disregard a substantial risk of serious harm to an inmate")). However, the Court found that, under *Farmer* and other Tenth Circuit cases, "any reasonable guard in defendant's position would have known that the failure to take *any action* for four minutes while witnessing an inmate repeatedly stab another inmate with a shank violates the Eighth Amendment."  *Id*.  The Court concluded that the conduct in *Wilson* was so "egregious" that *Farmer* would apply with "obvious clarity."  *Id*. (citing *Yehia*, 38 F.4th at 1294).[9]  While *Wilson* was a rare obvious case, the Court finds that the alleged conduct of Sergeant Acuna and Sergeant Gutierrez is not so "egregious" that the general precedent in *Farmer* would apply with "obvious clarity."  *See Yehia*, 38 F.4th at 1294; *see also Surat*, 52 F.4th at 1276 (noting that "there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances").

Mr. McCranie does not identify any other authority from the Supreme Court or the Tenth Circuit demonstrating that the law was clearly established.  *See Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1303 (10th Cir. 2021) (noting that "plaintiff bears the burden of citing to [the court] what he thinks constitutes clearly established law" (citation omitted)); *Est. of Melvin by & through Melvin v. City of Colo. Springs, Colo.*, 2023 WL 8539921, at *6 (10th Cir. Dec. 11, 2023) (granting qualified immunity to the officers because the plaintiff "failed to meet its burden to show the constitutional right at issue

---

[9] In *Wilson*, the Court also found that the "the clear weight of authority from other circuits" supported the denial of qualified immunity.  *Wilson*, 2023 WL 2574375, at *6 (collecting cases from the Third, Fourth, Seventh, Eighth, and Eleventh Circuits holding that an officer who witnesses an inmate-on-inmate assault but takes no action to intervene violates the Eighth Amendment).

was clearly established").  Accordingly, the Court finds that Sergeant Acuna and Sergeant Gutierrez are entitled to qualified immunity on plaintiff's first claim.  The Court grants this portion of defendants' motion and dismisses the first claim against Sergeant Acuna and Sergeant Gutierrez with prejudice.

### C.  <u>Second Claim – Sergeant Acuna and Sergeant Gutierrez</u>

Plaintiff's second claim alleges that Sergeant Acuna and Sergeant Gutierrez violated Mr. McCranie's Eighth Amendment rights by failing to supervise Officer Gavinski and John Doe # 1.  Docket No. 1 at 13-15, ¶¶ 101-113.  Plaintiff asserts that the sergeants failed to supervise John Doe # 1 "when they failed to order the escort to remain with Mr. Daniels until Mr. Daniels was secured in his housing pod" and the sergeants failed to supervise Officer Gavinski "when they failed to stop her from opening the door to Day Hall #5 in response to Mr. Daniels' repeated requests."  Docket No. 26 at 12.  Sergeant Acuna and Sergeant Gutierrez argue that Mr. McCranie has failed to plead a constitutional violation and they are entitled to qualified immunity.  Docket No. 16 at 11-15.

Section 1983 does not "authorize liability under a theory of respondeat superior." *Perry v. Durborow*, 892 F.3d 1116, 1121 (10th Cir. 2018) (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013)).  Thus, it is "not enough" that Sergeant Acuna and Sergeant Gutierrez "acted in a supervisory role" when the other officers allegedly violated Mr. McCranie's constitutional rights.  *See Keith v. Koerner*, 843 F.3d 833, 838 (10th Cir. 2016).  To establish liability, Mr. McCranie must show an "affirmative link" between the sergeants and the constitutional violation, *id*. (quoting *Schneider*, 717 F.3d at 767), which requires "more than a

supervisor's mere knowledge of his subordinate's conduct."  *Schneider*, 717 F.3d at 767 (citation and internal quotations omitted).  To state a § 1983 claim against a defendant based on her supervisory responsibilities, a plaintiff must establish the following three elements: (1) personal involvement; (2) causation; and (3) state of mind.  *Id*.; *see also Keith*, 843 F.3d at 838; *Perry*, 892 F.3d at 1121.

In its discretion, the Court will address the second prong of the qualified immunity analysis first.  *See Pearson*, 555 U.S. at 236; *Janny v. Harford*, No. 17-cv-00050-PAB-SKC, 2019 WL 4751761, at *4 (D. Colo. Sept. 30, 2019).  Mr. McCranie argues that the sergeants violated Mr. McCranie's clearly established Eighth Amendment rights by failing to enforce CSP's policy requiring inmates to be escorted at all times outside of their housing pod, the policy prohibiting inmates from entering unauthorized areas of the prison, and the policy related to keep-separate orders.  Docket No. 26 at 14.  In support of his argument, Mr. McCranie cites *Goka v. Bobbitt*, 862 F.2d 646, 651-52 (7th Cir. 1988).  *Id*.  In *Goka*, a case involving an inmate who assaulted another inmate with a broom handle that he kept in his cell, the Seventh Circuit reversed the district court's dismissal of an Eighth Amendment deliberate indifference claim, finding that there were genuine disputes of material fact as to whether the officers failed to enforce a tool control policy at the prison, which required prison staff to lock all tools in a storage chest at the end of the day.  *Goka*, 862 F.2d at 648, 651-52.

However, Mr. McCranie's citation to *Goka*, a Seventh Circuit case, does not identify clearly established law because it is not a Supreme Court or a published Tenth Circuit decision.  *See Bledsoe v. Carreno*, 53 F.4th 589, 607 (10th Cir. 2022) ("To demonstrate that a right is clearly established, a plaintiff must identify an on-point

Supreme Court or published Tenth Circuit decision, or show that the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains." (internal quotations and citation omitted)); *Swanson v. Griffin*, 2022 WL 570079, at *3 (10th Cir. Feb. 25, 2022) (discussing how "a plaintiff's identification of a single out-of-circuit case is not sufficient to satisfy the weight of authority approach" for demonstrating that the law is clearly established).   Mr. McCranie cites no other cases in support of his argument that Sergeant Acuna and Sergeant Gutierrez violated plaintiff's clearly established constitutional rights by failing to supervise Officer Gavinski and John Doe # 1.   Because Mr. McCranie has failed to satisfy his burden of providing clearly established law, the Court finds that Sergeant Acuna and Sergeant Gutierrez are entitled to qualified immunity on the second claim.   *See Crane*, 15 F.4th at 1303; *Flores v. Henderson*, 101 F.4th 1185, 1193 (10th Cir. 2024) (noting that a "court must grant the defendant qualified immunity if the plaintiff fails to prove either prong" (citation omitted)). The Court therefore grants this portion of defendants' motion and dismisses the second claim with prejudice.

## IV.    CONCLUSION

It is therefore

**ORDERED** that the Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(B)(6) [Docket No. 16] is **GRANTED in part and DENIED in part**.  It is

**ORDERED** that plaintiff's first claim is **DISMISSED with prejudice** against defendants Rene Acuna and Karla Gutierrez.  It is further

**ORDERED** that plaintiff's second claim is **DISMISSED with prejudice**.  It is further

**ORDERED** that defendants Rene Acuna and Karla Gutierrez are dismissed from this case.

DATED September 24, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge